959 F.2d 239
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CRYSTAL BAY GENERAL, a governmental agency with jurisdiction
in Washoe County, State of Nevada, Plaintiff-Appellee,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant.
 No. 90-16417.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 8, 1991.
Decided April 7, 1992.
 
 Before FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Aetna Casualty and Surety Company ("Aetna") appeals from the District Court's order granting declaratory relief to the Crystal Bay General Improvement District ("CBGID") on the issue of CBGID's obligation to repay money advanced to it by Aetna to fund a settlement reached by CBGID with third parties who had sued it. Aetna also appeals from the district court's denial of its motion for judgment notwithstanding the verdict ("JNOV") on the issue of its bad faith in dealing with CBGID.
 
 
 3
 We reverse the denial of Aetna's JNOV motion, reverse in part the order granting declaratory relief to CBGID, and remand.
 
 BACKGROUND
 
 4
 CBGID is a sewer district on the Nevada side of Lake Tahoe. From 1979 to 1985, CBGID was insured by Aetna under a series of comprehensive general liability policies, including a policy issued on June 18, 1982 for a one year term (the "Policy").
 
 
 5
 On February 18, 1983, a sewage spill took place at a sewage pump station owned by CBGID. On September 20, 1984, a complaint was filed by Theodore Geiszler and Steven Kaiser, residents of the area near the pump station (the "Geiszler-Kaiser suit") against CBGID, the Incline Village General Improvement District and the company that constructed the pump station. The complaint alleged that the pump station had constituted a nuisance since its construction. However, it identified only one specific incident of pollution: the February 18, 1983 spill. It alleged that the spill had "deposited raw sewage, effluent and waste water" on the property of the plaintiffs. CBGID tendered defense of the suit to Aetna. Aetna hired Paul Hamilton, a Reno attorney to defend the case.
 
 
 6
 In February, 1986, Paul Hamilton recommended that CBGID settle the case. Aetna would contribute $35,000 and CBGID would contribute $55,000 to the settlement. The CBGID Board approved such an arrangement. However, before the settlement was completed, the Board rescinded its approval. In addition, concerned that there might be a conflict between CBGID's interests and Aetna's, the Board voted to seek separate counsel.
 
 
 7
 In March, 1987, the CBGID Board voted to settle the Geiszler-Kaiser suit. Under the settlement, the bulk of funds contributed by the defendants and their insurers would go to construction of a sewer bypass and to remodeling of a pump station. The plaintiffs' attorneys' fees would also be paid. No other money would be paid directly to the plaintiffs.
 
 
 8
 Prior to the settlement, Aetna had offered CBGID two alternatives as to funding. Aetna agreed to make an unconditional contribution of $35,000. In the alternative, Aetna agreed to advance $96,000 as a contribution to the settlement; however, under this arrangement Aetna reserved its rights to establish that the policy did not cover the sums it advanced. CBGID accepted the latter alternative. Aetna then contributed $96,000 to the settlement.
 
 
 9
 In July, 1987, CBGID filed suit in state court seeking compensatory and punitive damages for bad faith, unfair insurance practices, breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty; it also sought declaratory relief establishing that coverage for the settlement existed under the Policy. Aetna removed the action to federal district court. It also counterclaimed, seeking declaratory relief on the coverage issue and reimbursement of the $96,000 it had advanced.
 
 
 10
 A jury trial was held. The jury found that Aetna was liable for compensatory damages for bad faith, but not for punitive damages. It also rendered an advisory verdict on the claim and counterclaim for declaratory relief. The jury found CBGID was not obligated to reimburse Aetna. The district court entered an order in accord with the advisory verdict. Aetna filed a motion for JNOV on the jury's bad faith verdict; the motion was denied.
 
 I. Jurisdiction; Applicable Law
 
 11
 This court has jurisdiction under 28 U.S.C. § 1291.
 
 
 12
 This case was removed to federal court on the basis of diversity jurisdiction; thus, the court applies Nevada substantive law. The federal court applies state law as it believes the highest court of that state would apply it. Insurance Co. of North America v. Howard, 679 F.2d 147 (9th Cir.1982).
 
 II. CBGID's Obligation to Reimburse Aetna
 
 13
 The jury rendered an advisory verdict that CBGID was not obligated to return the $96,000 advanced by Aetna. This was in effect a finding that coverage for the settlement amount existed under the Policy. The district court accepted the jury's verdict. Aetna argues that the court erred in this holding, and that the amount it advanced was for losses not covered by the policy.
 
 
 14
 A district court's findings of fact are reviewed under the clearly erroneous standard, and its conclusions of law are reviewed de novo. Rozay's Transfer v. Local Freight Drivers, Local 208, 850 F.2d 1321, 1326 (9th Cir.1988).
 
 
 15
 The interpretation of a contract is a mixed question of law and fact. State Farm Mut. Auto. Ins. v. Fernandez, 767 F.2d 1299, 1301 (9th Cir.1985). "In general, factual findings as to what the parties said or did are reviewed under the "clearly erroneous" standard while principles of contract interpretation are reviewed de novo." L.K. Comstock & Co. v. United Engineers & Constructors, 880 F.2d 219, 221 (9th Cir.1989).
 
 
 16
 A. Was there an "occurrence" within the meaning of the policy?
 
 
 17
 Aetna argues first that the odorous emissions caused by the February, 1983 incident did not constitute an "occurrence" under the policy of insurance.
 
 The Policy provided:
 
 18
 [Aetna] will pay on behalf of [CBGID] all sums which [CBGID], by reason of contractual liability assumed by [it] under any written contract of the type designated in this schedule for this insurance, shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence....
 
 
 19
 The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended by the standpoint of the insured."
 
 
 20
 The district court's implicit finding that the spill constituted an "occurrence" within the meaning of the policy was not clearly erroneous. There was evidence that the spill was a sudden event that CBGID neither "expected" nor "intended."
 
 
 21
 B. Did the settlement cover damages CBGID was obligated to pay because of property damage?
 
 
 22
 The settlement agreement provides for construction of the sewer bypass, for payment of the Geiszler-Kaiser plaintiffs' attorneys' fees, and for dismissal with prejudice of the Geiszler-Kaiser suit. There was testimony that suggested that as a consequence of the February, 1983 spill, Kaiser had had to lay extra gravel at a cost of $300, but that this was not an issue at settlement.
 
 1. Construction of the sewer bypass
 
 23
 The costs of construction of the sewer bypass do not constitute damages for which CBGID became liable as a result of the spill. There was no evidence the bypass would remedy damage caused by the occurrence. Rather, the bypass was a prophylactic measure designed to prevent future spills. Therefore, to the extent Aetna's contribution went to pay for the sewer bypass, CBGID must reimburse Aetna for such amounts.
 
 2. Attorneys' Fees
 
 24
 The settlement provides for the payment of $17,000 in attorneys' fees the Geiszler-Kaiser plaintiffs incurred in litigating their suit. We conclude that CBGID's coverage extended to a portion of these fees.
 
 
 25
 Because the spill constituted an "occurrence" within the meaning of the policy, Aetna was obligated to defend CBGID in suits arising out of the incident, and to pay sums for which CBGID became liable as a result of the "occurrence." To the extent that they arise out of litigation resulting from the February 18, 1983 spill, the Geiszler-Kaiser plaintiffs' attorneys' fees constitute such sums. Thus, the district court was correct in holding that CBGID is not obligated to reimburse Aetna for the settlement contribution Aetna advanced, to the extent that Aetna's contribution to the settlement was used to pay the plaintiffs' attorneys' fees relating to the spill.
 
 
 26
 However, the Geiszler-Kaiser complaint also contained allegations of an ongoing nuisance, and of damage unrelated to the February 18, 1983 spill. CBGID has not claimed that it is covered for liability resulting from such allegations. To the extent that the plaintiffs' attorneys' fees are attributable to litigation and settlement of these other claims, then, Aetna is not obligated to pay them. On remand, therefore, the district court must determine what portion of the $17,000 in fees can be attributed to settlement of the claims arising out of the February 18, 1983 spill. CBGID is obligated to reimburse Aetna only for the difference between the aliquot share of attorneys' fees and $96,000.
 
 III. Denial of Aetna's JNOV motion
 
 27
 We conclude the district court erred in refusing to grant Aetna's motion for JNOV.
 
 
 28
 The Court of Appeals reviews a district court's grant of JNOV by applying the same standard used by the lower court. The Jeanery, Inc. v. James Jeans, Inc., 849 F.2d 1148, 1151 (9th Cir.1988).
 
 
 29
 JNOV is proper if " 'without accounting for the credibility of the witnesses, we find that the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion--that the moving party is entitled to judgment notwithstanding the adverse verdict.' "
 
 
 30
 Id. (citation omitted).
 
 
 31
 Under Nevada law, "where an insurer fails to deal fairly and in good faith with its insured ... such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." United States Fidelity and Guar. Co. v. Peterson, 540 P.2d 1070, 1071 (Nev.1975). "The implied promise [to act in good faith] requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." Egan v. Mutual of Omaha Ins., 620 P.2d 141 (Cal.1979). To fulfill its duty, the insurer must give as much consideration to its insured's interests as it does to its own. Id.
 
 
 32
 We find that, on the evidence presented, the only reasonable conclusion was that Aetna did not act in bad faith. Aetna made reasonable efforts to resolve CBGID's claim, including the prompt assignment of the claim to a coverage attorney, and offers to settle. A reasonable jury could not find that Aetna attempted to deprive CBGID of the benefits of the insurance contract, or disregarded unfairly CBGID's interests.
 
 
 33
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3